B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

FILED 2016 JUN 23 PM 12:53 U.S. BANKRUPTCY COURT MIDDLE DISTRICT OF T[N]

| PLAINTIFFS<br>EVA M. LEMEH, AS CHAPTER 7 TRUSTEE OF DEBTOR'S BANKRUPTCY ESTATE | DEFENDANTS<br>GORDON & SILVER, LTD., GREGORY E. GARMAN, AND ERIC D. HONE |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>DOUGLAS B. OMER (019529)<br>SHEPPARD LAW GROUP, PLC<br>1604 WESTGATE CIRCLE, SUITE 204A<br>BRENTWOOD, TN 37027 | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
NEGLIGENCE/LEGAL MALPRACTICE AND/OR BREACH OF FIDUCIARY DUTY FOR FAILURE TO TIMELY NOTIFY INSURANCE CARRIER OF CLAIMS AND LAWSUIT AGAINST DEBTORS AND FRO CHARGING FEES FOR WORK THAT ATTORNEY SELECTED BY CARRIER WOULD HAVE DONE.

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 3,022,163.75 |
| Other Relief Sought<br>INTEREST IF ALLOWED AND COSTS | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>FREDERICK ARNEMAN COOPER & KATHERINE HARRISON COOPER | BANKRUPTCY CASE NO.<br>3:15-BK-01641 | |
| DISTRICT IN WHICH CASE IS PENDING<br>MIDDLE DISTRICT OF TENNESSEE | DIVISION OFFICE<br>NASHVILLE | NAME OF JUDGE<br>MARIAN F. HARRISON |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>[signature] | | |
| DATE<br>6/23/2016 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>DOUGLAS B. OMER | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: ] | No. 3:15-bk-01641 |
| ] | Chapter 7 |
| FREDERICK ARNEMAN COOPER and ] | Judge Harrison |
| KATHERINE HARRISON COOPER, ] | |
| Debtors, ] | |
| ] | |
| EVA M. LEMEH, as Chapter 7 Trustee ] | |
| of Debtors' Bankruptcy Estate, ] | |
| Plaintiff, ] | |
| v. ] | Adversary Proc. No._____ |
| GORDON & SILVER, LTD., ] | |
| GREGORY E. GARMAN and ] | |
| ERIC D. HONE, ] | |
| Defendants. ] | |

## COMPLAINT

The Plaintiff, Eva M. Lemeh, as Chapter 7 Trustee for the bankruptcy estate of the debtors Frederick Arneman Cooper and Katherine Harrison Cooper ("the Coopers") and pursuant to 11 U.S.C. 704(a)(1) and Federal Rules of Bankruptcy Procedure 7001(1), brings this action to recover money owed to the Coopers by the Defendants Gordon & Silver, Ltd. ("Gordon Silver"), Gregory E. Garman and Eric D. Hone, as a result of the Defendants' negligence/ legal malpractice and breach of fiduciary duty, and in support would show the court as follows:

### I. PARTIES

1. Plaintiff Eva M. Lemeh is serving as Chapter 7 Trustee of the bankruptcy estate of the debtors Frederick Arneman Cooper and Katherine Harrison Cooper in this

1

case, and thereby succeeds to all causes of actions held by the debtors, and has the exclusive capacity to sue on behalf of the debtors' estate.

2.  Defendant Gordon Silver is a professional corporation organized and existing under the laws of the State of Nevada and engaged in the practice of law, with its principal place of business in Las Vegas, Nevada, and can be served through its registered agent for service of process in Nevada, Mark S. Dzarnoski, 800 N. Rainbow Blvd., Suite 100, Las Vegas, Nevada 89107.

3.  Defendant Gregory E. Garman is a resident of the State of Nevada and an attorney licensed to practice law there. At all times relevant to this action, Garman was a Gordon Silver shareholder and employee. He can be served with process at the location of his current law firm, Garman Turner Gordon, located at 650 White Dr., Suite 100, Las Vegas, Nevada 89119.

4.  Defendant Eric D. Hone is a resident of the State of Nevada and an attorney licenses to practice there. At all times relevant to this action, Hone was a Gordon Silver employee. He can be served with process at the location of the current law firm for which he works, Dickinson Wright, 8363 West Sunset Rd., Suite 200, Las Vegas, Nevada 89113.

## II. JURISDICTION AND VENUE

5.  This is an adversary proceeding brought by Plaintiff under 11 U.S.C. 704(a)(1) in the Chapter 7 Bankruptcy case of In re: Frederick Arneman Cooper and Katherine Harrison Cooper, pending in the U.S. Bankruptcy Court for the Middle District of Tennessee, Nashville division, under No. 3:15-bk-01641. Jurisdiction to entertain this

proceeding is conferred upon this Court by 28 U.S.C. §1334(b), 28 U.S.C. §157(a) and (h)(1), 28 U.S.C. §151 and 11 U.S.C. 704(a)(1).

6. This matter is a non-core proceeding under 28U.S.C. §157(b)(2), and the Plaintiff consents to the entry of a final order or judgment by the bankruptcy judge.

7. Venue is proper with this court pursuant to 28 U.S.C. §§1408(1) and 1409(a).

8. Pursuant to 11 U.S.C. §105(a), this court may issue any order, process or judgment necessary or appropriate to carry out the provisions of the bankruptcy title.

### III. FACTS

9. Prior to 2007, the debtors Frederick Arneman Cooper ("Fred Cooper") and Katherine Harrison Cooper ("Katherine Cooper") had nearly 20 years' experience in developing and managing auto-loan businesses. Fred Cooper had co-founded an auto finance business, SeaWest Financial Corp. and served as its President/Chief Executive Officer/Director from 1992-2004. During that time, SeaWest grew to having $250,000,000.00 in receivables, 230 employees and an approved dealer network in excess of 1,000 dealers in 48 states.

10. In 2007, Fred Cooper and his wife Katherine Cooper created a holding company known for purposes of this case as Harbor Structured Finance, LLC ("HSF")[1], which was later used to acquire and operate a 48 year-old sub-prime auto finance company, Western Funding, Inc. ("Western"). Before this acquisition, while HSF was reviewing the potential purchase of various companies, the Coopers' business associate

---

[1] This entity was originally called Harbor Truck Structured Finance, LLC, because the Coopers initially planned to use it to acquire a large pool of truck loans, but the name was changed to HSF when it acquired an auto finance company.

3

Phillip Nick ("Nick") agreed to utilize his expertise and knowledge to assist HSF with the acquisition of a sub-prime auto finance company in return for a 25% equity interest in HSF. After the Coopers and Nick had targeted Western as the proposed acquisition, a $3,000,000.00 million investment in HSF was made by some of Nick's family members and entities owned by them, and in return Nick and the family members and entities collectively received a 45% minority interest in HSF, becoming class B members.

11. Western was acquired by HSF on October 11, 2010. Fred Cooper became President and Chief Executive Officer of Western, while Katherine Cooper was its Executive Vice President and Chief Operating Officer. In early 2011, they both moved from Ohio to Las Vegas, Nevada, the location of Western's headquarters.

12. Even before the Western acquisition, the class B members of HSF (including Nick) began attempting to illegally take control of HSF and to oust the Coopers from managing the company. Their attempts began when they fraudulently altered provisions of HSF's Amended and Restated Limited Liability Company Agreement, without the Coopers' knowledge, to give themselves equal representation and voting power to manage and control the company's affairs. After the acquisition of Western, both Nick and the class B members' attorney Joseph Murray falsely advised representatives of Bank of America, which had extended the line of credit needed to operate Western, that the Coopers were engaging in dishonest acts. The bank ultimately withdrew its funding as a result, and when the Coopers succeeded in securing replacement funding from the Bank of Montreal, the class B members (including Nick) would not approve the funding agreement unless HSF's operating agreement was amended to provide that they be paid a semi-annual return of $112,500.00 beginning on

4

September 15, 2012. Because HSF was not permitted by the credit agreement with the Bank of Montreal to make these payments in the event of a default, the Coopers were forced to guarantee these payments in order to get the credit Western needed to stay in business.

13. On July 20, 2012, another attorney for Nick and the other class B members submitted to HSF's board a derivative litigation demand letter containing false and defamatory claims that the Coopers had breached their fiduciary duties of loyalty to the company and its subsidiary Western by obtaining certain allegedly improper expense reimbursements and payments from those companies. A second derivative litigation demand letter containing the same meritless allegations against the Coopers was presented to HSF's board by the class B members' attorney on August 9, 2012. Both letters demanded that the HSF recover a total of $1,003,327.60 from the Coopers and threatened to file a derivative action against it if this was not done.

14. In August 2012, after this second letter was sent, the Coopers hired the law firm of Gordon Silver to represent them in the legal matter of the derivative claims. The Legal Representation Agreement which was signed noted that the legal representation was "involving the analysis of derivative claims by other shareholders of Western." This agreement further provided that "Gregory E. Garman will be the attorney supervising the Representation," and exhibit A to the agreement noted that the "Responsible Attorneys" would be Garman and Eric D. Hone. A copy of this Legal Representation Agreement is attached as exhibit "A".

15. At all times, the defendants held themselves out as competent in the area of the law for which they were retained by the Coopers, the handling of derivative claims

5

Case 3:16-ap-90184    Doc 1    Filed 06/23/16    Entered 06/23/16 13:34:10    Desc Main
Document      Page 7 of 20

by stockholders. The defendant attorneys not only had a duty to exercise reasonable care and diligence to protect the Coopers' interests on the derivative claims, but they also had an elevated duty to exercise exceptional care by employing their expertise and skill to help identify the Coopers needs as a result of the claims.

16. During the course of the defendants' representation of the Coopers, there were several instances when the attorneys' conduct fell below the applicable standard of care, asset forth below.

17. At the time the derivative litigation demand letters were delivered and when the defendants were subsequently hired to protect the Coppers' interests, HSF had in force a Management Protection insurance policy with North River Insurance Company ("North River") that provided coverage to its directors and officers, who included the Coopers. This is a "claims made policy," meaning that it provides coverage for claims first made against insured persons during the policy period, which was initially from September 14, 2011 to September 14, 2012. Under the terms of this policy, a claim is defined as including a written demand for money damages. As a condition precedent to the insurer's obligation to pay defense costs and amounts the insured is legally obligated to pay within policy limits, the insured must give written notice of claims "as soon as practicable, but in no event later than 30 days after the end of the policy period . . . ." That meant that the deadline for notifying North River's authorized claims administrator Crum and Forster of the derivative claims in the two letters was October 13, 2012 (30 days after the policy period ended).

18. While engaged to protect the Coopers' interests in the matter of the derivative claims made against them, the defendants negligently failed to act with the

degree of competence required of a Nevada attorney handling this sort of legal matter and/or committed malpractice by (a) failing to determine whether HSF had insurance providing coverage for the Coopers, (b) failing to review HSF's North River Management Protection insurance policy to learn that coverage was available to the Coopers and that the derivative litigation demand letters were claims that needed to be reported, (c) to provide this information to the Coopers and (d) to make certain that Crum and Forster would be timely notified of these claims. The Defendant Garman also negligently failed to act with the degree of competence required of a Nevada attorney and/or committed malpractice by failing to properly supervise the legal work of the Defendant Hone.

19. The defendants each owed the Coopers an unqualified fiduciary duty to act at all times in the Coopers' best interests, and not to expose them to any unnecessary or unreasonable financial harm.

20. The defendants each breached their fiduciary duty to the Coopers by continuing to charge them for attorneys' fees while failing to ensure that the insurance carriers representative Crum & Forster was timely notified of claims against them in the derivative litigation demand letters, so the carrier could provide them with a defense and indemnify them under the terms of the policy. By doing this, the defendants put their own financial interests and gains to be realized by charging the Coopers for more attorneys' fees, ahead of the Coopers' interests of having the matter handled by an attorney provided by HSF's insurance carrier, and obtaining coverage to the extent provided by the policy.

7

21. At the Coopers' expense, the defendants prepared and sent a letter to the class B members' attorney in response to the two derivative litigation demand letters on September 3, 2012. These attorneys were ultimately unsuccessful in negotiating a settlement to resolve the dispute.

22. On October 9, 2012, Nick and the other class B members of HSF filed a lawsuit against the Coopers in the Court of Common Pleas of Franklin County, Ohio (the county where Nick and most of the other class B members either resided or were located, and where the Coopers had lived before moving to Las Vegas) ("the Nick lawsuit"). One portion of this lawsuit contains the same false and defamatory claims originally alleged in the derivative litigation demand letters-- that the Coopers had breached their fiduciary duties of loyalty to HSF and Western by obtaining certain allegedly unjustified reimbursements and payments from those companies. But the Nick lawsuit also contains a number of other baseless claims that were not mentioned in the derivative litigation demand letters-- that the class B members were fraudulently induced to invest $3,000,000.00 in HSF by the Coopers' alleged misrepresentations (which were in fact never made) that (a) HSF owned GPS technology that would generate significant revenue for Western (the Coopers instead personally owned what was in fact undeveloped GPS technology), and that (b) they (the Coopers) had made a $400,000.00 contribution to HSF in October 2010 (when in fact they had merely addressed the value of their *prior* investments in HSF). The Nick lawsuit also sought to recover payment from the Coopers, pursuant to their illegally obtained guaranty agreement, of a $112,500.00 preferred return payment to the class B members for March 2013, which HSF could not make because it had defaulted on its credit agreement.

23. Immediately after the Coopers were served with this lawsuit, they directed Hone to submit the required written notice of the lawsuit to Crum & Forster, to activate the coverage under the North River Management Protection policy. Hone agreed to do so promptly. Because the defendant lawyers had negligently not advised the Coopers of the need to timely notify Crum & Forster of the derivative litigation demand letters, the Coopers were not aware of any upcoming deadline for notifying the carrier of the breach of fiduciary claim concerning the allegedly improper reimbursements and payments they received. But that deadline did not apply to the alleged misrepresentation claims (concerning the GPS technology and the $400,000.00 Contribution) and the claim for the $112,500.00 payment under the unenforceable guaranty, which were all made against the Coopers for the first time in the Nick lawsuit.

24. While Gordon Silver's attorneys were supposed to be preparing the notice paperwork to submit to Crum and Forster, the Coopers hired an attorney in Ohio, Matthew Burkhardt, who filed an answer for them in the Nick lawsuit in late December 2012. Shortly thereafter, Burkhardt was replaced as the Coopers' attorney by Quintin Lindsmith. In mid-January 2013, Hone advised the Coopers that the notice paperwork had been submitted to Crum & Forster, but that he had not yet received a response. During that time, the Coopers agreed to have Hone of Gordon Silver represent them for the limited and specific purpose of negotiating a settlement in the Ohio lawsuit with counsel for Nick and the class B members. A company called CarFinco was then interested in acquiring Western, and the proposed settlement was to resolve the Nick lawsuit by using the proceeds from an anticipated sale to CarFinco.

9

25. While settlement negotiations were ongoing, Hone again advised the Coopers that Crum & Forster had been provided with all the necessary notice paperwork, but that coverage was not an overriding concern at that point, because it then appeared that the parties were on the verge of settling the dispute and disposing of the Nick lawsuit.

26. On February 28, 2013, the Coopers and the class B members (including Nick) entered into an agreement to settle the Nick lawsuit. As a result, the parties agreed to stay the Ohio case, and an order to that affect was entered in March 2013.

27. The Coopers were ultimately unable to buy out Nick and the other class B members under the terms of an Amended Settlement Agreement. This resulted in the Ohio court judge reactivating the Nick lawsuit on August 8, 2013 (at the request of the class B members). The Coopers then contacted Hone and inquired about the status of the request to Crum & Forster that they be provided with coverage and a defense. He responded that he would follow up with Crum & Forster on the notice documents he said he had submitted in October 2012.

28. In September 2013, Western was forced to file a voluntary petition for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the District of Nevada, primarily because the false claims made against the Coopers by Nick and other class B members made it impossible for HSF to obtain the capital needed to keep Western operating.

29. On June 23, 2014, Quintin Lindsmith, the attorney representing the Coopers in the Nick lawsuit against them, filed a motion to withdraw from the representation. When the Coopers learned about this a few days later, they spoke to

10

Hone, who told them that he had been assured by Crum & Forster that it would provide them a defense and coverage under HSF's Management Protection policy. By this time, the Coopers did not have the financial ability to hire another attorney to represent them in place of Lindsmith. As a result, they continued to contact Hone regularly and remind him that it was imperative that the insurance company provide them with an attorney and coverage under the policy. Each time this was done, Hone assured them that Crum & Forster would do this.

30. Throughout this time, the Coopers were unaware that Hone had in fact negligently failed to submit as promised the required written notice of the Nick lawsuit to Crum & Forster in October 2012, and that a written notice letter was not submitted by Hone to Crum & Forster until May 29, 2014. Because the written notice from Hone was not send until some 19 months after the filing of the Nick lawsuit, it was not timely under the North River Management Protection policy, which required that such notice be given "as soon as practicable." The Coopers also did not know it when Crum & Forster notified Hone by letter dated June 24, 2014, that it would not be providing coverage or defense to them.

31. By failing to timely submit the written notice to Crum & Forster as they had agreed to do, the defendants breached their duty to exercise reasonable care and diligence to protect the Coopers' interests. The Defendant Garman was also negligent and/or committed malpractice by failing to properly supervise the Defendant Hone. The defendants' negligence/legal malpractice was further compounded by the fraudulent concealment of Hone's omission from the Coopers.

11

32. Each of the defendants also breached their fiduciary duty to the Coopers by failing to timely notify Crum & Forster of the Nick lawsuit as promised, while at the same time charging them for more attorney's fees to negotiate the ultimately unfulfilled settlement with Nick and the other class B members. These fiduciary duties required the defendants to act in good faith and the Coopers' best interests, and not to expose them to unnecessary or unreasonable financial harm. Instead, the defendants put their own financial interest of generating more attorneys' fees ahead of the Coopers' interest in having the negotiations handled by an attorney provided at the insurance carrier's expense and having coverage to the extent provided by the Management Protection policy.

33. All the acts and omissions of the lawyers Garman and Hone were undertaken within the course and scope of their employment with the Gordon Silver law firm, rendering Gordon Silver liable for their misconduct/malfeasance under the doctrine of *respondeat superior*.

34. On December 15, 2014, while the Coopers were without an attorney representing them in the Nick lawsuit, Nick and the other class B members of HSF filed a motion for partial summary judgment. This motion sought an order establishing that (a) the Coopers had fraudulently induced the class B members to invest in HSF by misrepresenting both that HSF owned GPS Technology that would generate significant revenue for Western and that they had made a $400,000.00 capital contribution in October 2010 (although in fact no such misrepresentations were made) and that (b) the Coopers owed the class B members $112,500.00 for breach of their guarantee to pay these members their preferred return for March 2013 (although this guaranty was in fact

illegally obtained). The motion for partial summary judgment did not address the other contention in the Nick lawsuit-- that the Coopers had obtained certain allegedly improper expense reimbursements and payments from HSF.

35. Although the certificate of service on the motion for partial summary judgment reflected that it was served on the Coopers, they did not in fact receive it. It was not until mid-January 2015, when they received notice of the completion of the briefing schedule for the motion, that they realized that a motion for partial summary judgment had been filed. Upon learning this, the Coopers immediately contacted Hone, advised him that this motion had been filed and that, as a result, obtaining defense counsel and coverage under the policy was of the utmost importance. Hone then misrepresented to them again that Crum & Forster had agreed to provide coverage and a defense and promised to follow up with them (despite his unrevealed knowledge that they had already advised him that no defense or coverage would be provided). The Coopers learned shortly afterwards that the partial summary judgment had already been entered against them on January 21, 2015, before they had this conversation with Hone.

36. On February 3, 2015, Mr. Cooper filed a *pro se* motion for relief from the judgment in the Nick lawsuit. Once that had been done, the Coopers again spoke to Hone, who admitted for the first time that he had failed to promptly send Crum & Forster the notice paperwork when the Nick lawsuit was first filed in October 2012, and he apologized. Hone further advised the Coopers that he had known for some time that Crum & Forster had denied coverage because of the late notice, but he never informed them about it because he was trying to get Crum & Forster to change its position (which it never did).

13

37. As a direct and proximate result of the defendants' negligence/legal malpractice and breach of their fiduciary duties, the Coopers were deprived of a defense under the North River Management Protection policy and consequently damaged by having to pay $115,000.00 out of their own pockets for legal fees and expenses reasonably necessary to defend the false allegations in the Nick lawsuit.

38. Other damages sustained by the Coopers as a direct and proximate result of the defendants' negligence/legal malpractice was the judgment of $2,907,163.75 entered against them in the Nick lawsuit, following a July 23, 2015 hearing on damages. Of this total, $2,794,663.75 was awarded to the class B members on their meritless fraudulent misrepresentation claim, and the balance of $112,500.00 was for the claimed breach by the Coopers of the illegally obtained guaranty. The $2,907,163.75 judgment against the Coopers, which they do not rightfully owe the class B members, was obtained because the meritless motion for partial summary judgment was granted when the Coopers were without counsel

39. On March 13, 2015, the Coopers filed a voluntary joint petition for a Chapter 7 bankruptcy in the United States Bankruptcy Court for the Middle District of Tennessee. Upon the filing of this petition, all property of the Coopers, including its cause of action against the defendants in this case, became part of the bankruptcy estate under 11 U.S.C. §541(a)(1). Eva M. Lemeh, as the Chapter 7 Trustee in this case with the obligation of collecting and reducing to money the property of the estate under 11 U.S.C. §704(1), has succeeded to the Coopers' cause of action against the defendants as the representative of the estate with the sole authority to sue on its behalf.

## IV. CAUSES OF ACTION

### A. NEGLIGENCE/LEGAL MALPRACTICE

40. Plaintiff incorporates herein paragraphs 1-39 above, as if set forth fully herein.

41. The Coopers hired the defendants as their attorneys, first in August 2012 to represent them in the matter of the two derivative litigation demand letters sent shortly beforehand on behalf of Nick and the other class B members, which letters contained false claims that the Coopers had obtained allegedly improper payments from HSF and Western, and on another occasion in October 2012, when the defendants agreed to submit the required written notice to Crum & Forster needed to obtain a legal defense and coverage under the Management Protection policy for the lawsuit Nick and the class B members had just filed against the Coopers, which lawsuit made both the same false allegations that the Coopers had obtained improper payments from HSF/Western and new false allegations that the Coopers had made fraudulent misrepresentations to induce a $3,000,000.00 investment by Nick and the class B investors and that the Coopers owed them $112,500.00 under the terms of an illegally obtained guaranty.

42. The defendants each had duties to the Coopers to exercise the same legal skills as a reasonably competent Nevada attorney in protecting the Coopers' interests as was agreed, by submitting to Crum & Forster the required written notice of the Nick lawsuit against the Coopers, and the defendants each also had an elevated duty to exercise exceptional care by employing their experience and skill to identify plaintiffs' needs as a result of the threats in the derivative litigation claim letters.

15

43. The defendants were negligent and/or committed legal malpractice initially by failing to find out what insurance coverage was available to the Coopers after the derivative litigation claim letters were submitted and by failing to insure that the insurance carrier's administrator Crum & Forster was given proper notice of these letters and later, after Nick and the class B members sued the Coopers, by failing to provide (as promised) timely notice to Crum & Forster about the lawsuit, while continuing to charge the Coopers attorney's fees for work that an attorney assigned to defend them by the insurance company under the Manage Protection policy would have otherwise done.

44. As a direct and proximate result of the defendants' negligence and/or legal malpractice, the Coopers have sustained damages of (a) $115,000.00 for the amount they unnecessarily paid out of their own pockets for attorney's fees and (b) $2,907,163.75 for the judgment against them covering amounts not rightfully owed to Nick and the class B members, for total damages of $3,022,163.75.

### B. BREACH OF FIDICUARY DUTY

45. Plaintiffs incorporate herein paragraphs 1-44 above, as if set forth fully herein.

46. As legal counsel for the Coopers, the defendants all owed them an unqualified fiduciary duty of loyalty and good faith. This duty required, at a minimum, that the defendants act solely in the Coopers best interests and refrain from conduct that exposed them to any unnecessary or unreasonable financial harm.

47. The defendants breached their fiduciary duty to the Coopers by continuing to charge the Coopers attorney's fees when the carrier providing Management Protection insurance would have hired an attorney to defend them had the defendants timely notified

the carrier's representative of claims against the Coopers, both in the derivative litigation demand letters and in the October 2012 Nick lawsuit. In this manner, the defendants put their own financial interests of obtaining more attorney's fees ahead of the Coopers' interests of having these matters handled by counsel provided by the insurance carrier and getting coverage to the extent provided by the policy.

48. As a direct and proximate result of the defendants' breaches of their fiduciary duty to the Coopers, they suffered damages as enumerated in § 44 above, resulting in total damages of $3,022,163.75.

**WHEREFORE,** PLAINITFF EVA M. LEMEH, AS CHATPER 7 TRUSTEE OF THE COOPERS' BANKRUTPCY ESTATE, HAVING EXCLUSIVE CAPACITY TO SUE ON BEHLAF OF THE ESTATE, RESPECTFULLY SEEKS THE FOLLOWING RELIEF FROM THE COURT:

**A.** That Plaintiff, as Chapter 7 Trustee of the Coopers' bankruptcy estate, be awarded a judgment for compensatory damages against the defendants for negligence/legal malpractice and/or breach of their fiduciary duty to the Coopers, in the amount of $3,022,163.75.

**B.** That Plaintiff, as Trustee of the bankruptcy estate be awarded any interest allowed by law.

**C.** That Plaintiff, as Trustee of the bankruptcy estate be awarded all costs of this cause.

**D.** Such other further relief that is just and proper.

Respectfully submitted,

/s/ Douglas B. Omer
Douglas B. Omer (BPR #019529)
SHEPPARD LAW GROUP, PLC
1604 Westgate Circle, Ste. 204A
Brentwood, Tennessee 37027
Telephone (615) 309-1707

Attorney for Plaintiff